UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 0:17cv61224

PHILIP TORTORICI,

Plaintiff,
- against -

AKAL SECURITY, INC.,
Defendant.

COMPLAINT

JURY DEMAND

Plaintiff Philip Tortorici, by his counsel, Cohen, Weiss and Simon LLP and Sugarman & Susskind, P.A., for his complaint alleges as follows:

**INTRODUCTION**

1. Plaintiff Philip Tortorici ("Tortorici") is a career law enforcement officer who has an asymmetrical hearing impairment. Notwithstanding that condition, he successfully worked for approximately 16 years as a federal court security officer in the United States Marshals Service's Court Security Program, most recently at the U.S. Courthouse for the Southern District of Florida in Fort Lauderdale, Florida. Defendant Akal Security, Inc. ("Akal"), a federal contractor, was Tortorici's employer for most of his Court Security Officer ("CSO") career, and was aware of Tortorici's hearing condition. Although Tortorici capably performed all of the duties of his position, Akal fired him because of his disability or perceived disability after the Marshals Service directed that he be removed from the Court Security Program due to his hearing. This is an action against Akal to redress its unlawful discharge of Tortorici in violation of the Americans with Disabilities Act, as amended, ("ADA"), 42 U.S.C. §12101 *et seq.* and the Florida Civil Rights Act, FLA. STAT. §§760.01 *et seq*.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3. Venue in this Court is proper under 28 U.S.C. §1391 and 42 U.S.C. § 2000e-5(f)(3) because Tortorici was terminated from employment in this judicial district and thus a substantial part of the events giving raise to the claim occurred in this judicial district, the unlawful employment practice occurred in this district, and Tortorici would have continued to work as a CSO in this judicial district but for Akal's unlawful employment practice.

## THE PARTIES

4. Akal is a New Mexico corporation with its principal offices in Espanola, New Mexico. Akal is in the business of contracting to provide court security services to the United States Marshals Service ("Marshals Service" or "USMS") as part of the Marshals Service's Court Security Program.

5. Tortorici is a career law enforcement officer. Before becoming a CSO, he had a 25-year career as a police officer with the Sunrise, Florida and Hollywood, Florida Police Departments, and before that, he served in the U.S. Army. As a CSO, Tortorici worked most recently, including at the time of his discharge, at the United States District Court for the Southern District of Florida in Fort Lauderdale, Florida. Tortorici's job as a CSO was to provide security to the federal court system and its judicial officers. At all relevant times, including at the time of Tortorici's discharge, Akal was under contract with USMS to provide court security services in the Eleventh Federal Judicial Circuit.

**FACTS**

The Marshals Service's Court Security Program

6.      To fulfill its statutory obligation to provide for the security of the federal judiciary, the Marshals Service administers the Court Security Program.  CSOs are employed by private contractors subject to approval by USMS.  Once accepted into the Court Security Program, the Marshals Service deputizes CSOs so that they function as law enforcement officers with powers of arrest while on duty.  Among other things, the Marshals Service has established and at different times revised medical standards which CSOs must meet to be eligible to work under a court security contract and to remain employed under such a contract as part of the Court Security Program.

7.      USMS requires all applicants to the Court Security Program to submit to a physical examination, the results of which are reviewed by the Marshals Service before a decision is made to accept a candidate into the Court Security Program.  CSOs are also required to have annual physical examinations, the results of which are also reviewed by the Marshals Service.

8.      USMS retains sole discretion under its contract with Akal to remove an individual's authorization to work under the contract and in the Court Security Program.  Once an individual's authority to work in the Court Security Program has been revoked by USMS for medical reasons or otherwise, that individual may no longer work as a CSO.

The Marshals Service's Hearing Requirements

9.      At all relevant times, USMS and Akal were parties to a contract for the Eleventh Federal Judicial Circuit.

10. USMS, in Section C.9.5.2 of that contract, required that: "The applicant or incumbent CSO shall be able to hear well enough to safely and efficiently carry out the essential requirements of the CSO position. This includes the ability to adequately comprehend speech during face-to-face conversations; comprehend speech during telephone conversations; comprehend speech during radio transmissions; comprehend speech when the individual cannot see another CSO; hear sounds that require investigation; and determine the source and location of sounds." The contract details specific hearing testing standards and procedures that purport to assess an individual's ability to meet these requirements.

11. Since April 2010 or thereabouts, USMS has purported not to consider loss of hearing in one ear to be a disqualifying factor, and Akal has recognized this. In this regard, in April 2010, James Tassone, at the time Akal's 11th Circuit Contract Manager, stated in an email that "Complete loss of hearing in one ear is no longer an automatic disqualifying factor."

Plaintiff's Hearing Disability

12. Tortorici had unilateral hearing loss in his left ear. As a result, he cannot hear certain audio frequencies with his left ear. Tortorici's hearing in his right ear has no such loss.

13. Tortorici's hearing has never affected his ability to perform his essential duties as CSO, and at all times he performed to the satisfaction of Akal, USMS and the judges he was assigned to protect. In 2009 or thereabouts, Tortorici saved the life of a federal judge who had a heart attack on the bench by performing cardiopulmonary resuscitation on her until an ambulance could arrive. In recognition of his efforts, Akal presented Tortorici with an award; the Marshals Service also invited Tortorici to Washington, D.C. and presented him with an

award of its own. In addition, Tortorici received numerous letters from other federal judges commending him for his lifesaving efforts.

USMS Testing of Hearing

14. After the Marshals Service accepted Tortorici into the Court Security Program, it required him to take a physical examination annually. Each of those physical examinations included a hearing test. The results of each of those examinations and hearing tests were submitted by Tortorici to Akal and then by Akal to the Marshals Service.

15. Since he became a CSO, Tortorici's hearing has remained relatively stable. When tested, his hearing in his right ear was consistently excellent and his hearing in his left ear was consistently poor.

16. In 2011, following Tortorici's annual physical and, upon information and belief, as the result of new USMS requirements for CSOs with unilateral hearing loss, the Marshals Service required Tortorici to purchase and wear hearing aids while on the job.

17. In 2011, Tortorici purchased hearing aids and thereafter wore them on the job.

18. Upon information and belief, Akal's site supervisors, as well as United States Marshals present at the Southern District of Florida courthouse where Tortorici worked, saw Tortorici's hearing aids and surmised from them that he had a hearing disability.

19. Tortorici's hearing disability or perceived disability has never affected his ability to safely and efficiency carry out the essential requirements of the CSO position. Specifically, Tortorici can adequately comprehend speech during face-to-face conversations, comprehend speech during telephone conversations, comprehend speech during radio

transmissions, comprehend speech when he cannot see another CSO, hear sounds that require investigation and determine the source and location of sounds.

USMS Demands Additional Hearing Testing

20. On March 18, 2014, Tortorici completed audiological testing as part of his annual physical. He submitted the results to Akal, which submitted them to the Marshals Service.

21. The Marshals Service contracts with Federal Occupational Health ("FOH") to review the results of CSO annual physicals. According to a Medical Review Form dated August 5, 2014 that the Marshals Service's Judicial Security Division issued to Akal, an FOH physician reviewed Tortorici's hearing test results and determined that Tortorici should be required to submit to additional testing because Tortorici "uses a hearing aid in one or both ears" and the "hearing test protocol has been modified since the prior tests in order to provide more accurate results."

22. On September 16, 2014, Tortorici completed the additional testing. In this test, Tortorici was required to plug his right ear with a foam earplug and then cover his right ear with a sound attenuating earmuff while his aided left ear was assessed. Neither the Marshals Service nor Akal had previously required this particular testing procedure.

23. According to another Medical Review Form dated November 23, 2014 that the Marshals Service's Judicial Security Division issued to Akal, an FOH physician reviewed the results of the additional testing and concluded that Tortorici did not meet the hearing requirements for the job of CSO. Specifically, the physician concluded that Tortorici's "speech recognition in quiet is significantly abnormal at 24% in the right [sic] ear and in the unaided state and 60% in the aided state[,]" and that his "impairment … poses an elevated safety

risk to himself, his colleagues, and the public." The FOH physician reached this conclusion even though the September 16, 2014 test results indicated that, with hearing aids in both ears and neither ear occluded, Tortorici scored a 96% in speech recognition, *i.e.*, that under the conditions in which Tortorici was permitted to and did work, his hearing was excellent

Akal's Termination of Plaintiff

24. In early December 2014, the Lead CSO who was serving as acting supervisor called Tortorici, who was then on duty in the middle of his shift, and told him that he must report upstairs to the USMS office and immediately turn in his USMS-issued identification and weapon and empty his locker. On the phone and once upstairs, Tortorici repeatedly asked the acting supervisor why he was being asked to turn in his weapon and clear out his locker. The site supervisor's only response was that "Colon [Joseph Colon, Akal's 11th Circuit Contract Manager] wants you out." and that "You'll get it by FedEx." Once Tortorici had relinquished his identification and weapon and cleared out his locker, the acting supervisor personally escorted Tortorici from the courthouse. Any courthouse personnel or visitor who witnessed the acting supervisor's interaction with Tortorici would have reasonably concluded from it that Tortorici had done something wrong and was being removed from the courthouse as a result.

25. Following his removal from the courthouse, Tortorici heard nothing more from Akal or USMS until approximately December 6, 2014, when he received a letter dated December 5, 2014 from Akal. The letter stated that Tortorici had been medically disqualified from the position of CSO, and enclosed a communication from the Marshals Service stating that Tortorici did not meet the CSO medical standards required by the contract.

26. Akal discharged Tortorici despite the fact that Tortorici did not and was not required to perform the job of CSO with his right ear plugged and covered.

27. Akal discharged Tortorici despite the fact that it knew that Tortorici's hearing disability or perceived disability had never affected his ability to safely and efficiently perform the responsibilities of the CSO position.

28. Akal discharged Tortorici because he is disabled or because it regarded Tortorici as disabled.

29. Akal discharged Tortorici in a manner that caused him humiliation and anguish and made him suffer reputational harm.

30. Akal knew that its termination of Tortorici was unlawful, because the EEOC issued a cause determination in at least one other case where Akal discharged a CSO at the behest of the Marshals Service in violation of the ADA.

Plaintiff Has Exhausted His Administrative Remedies

31. Tortorici timely filed a disability discrimination charge against Akal with the Miami District Office of the Equal Employment Opportunity Commission ("EEOC"). By letter dated March 23, 2017, the EEOC issued Tortorici a Notice of Right to Sue. The notice stated that Tortorici had the right to bring suit against Akal within ninety (90) days of his receipt of the notice. This complaint was timely filed within that 90-day period.

32. Tortorici also filed a formal complaint with the Marshals Service's Equal Employment Opportunity Office challenging his removal from the contract by the Marshals Service. The Marshals Service and Tortorici have entered into an agreement resolving that complaint. That agreement, which is not confidential, provides for a monetary settlement in exchange for Tortorici's agreement to not seek reemployment in the Court Security Program and to release the Marshals Service from any causes of action relating to his disability discrimination claim.

## AKAL DISCRIMINATED AGAINST TORTORICI IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

33. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if stated herein.

34. In discharging Tortorici, who was fully qualified to carry out the duties of CSO, because he is disabled or because it regards him as disabled, Akal violated the ADA. 42 U.S.C. §12112(b)(2).

35. Akal's unlawful acts were intentional and have caused Tortorici physical and emotional distress and harm.

## AKAL DISCRIMINATED AGAINST TORTORICI IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

36. Plaintiff repeats and realleges the allegations set forth in the foregoing paragraphs as if stated herein.

37. Akal is an employer within the meaning of the Florida Civil Rights Act.

38. Hearing loss is a handicap within the meaning of the Florida Civil Rights Act.

39. Akal discharged and discriminated against Tortorici due to his hearing loss.

40. By discharging and discriminating against Tortorici due to his handicap, Akal committed an unlawful employment practice in violation of Sections 710.10(1)(a) and 710.10(1)(b) of the Florida Civil Rights Act.

41. Akal's unlawful acts were intentional and have caused Tortorici physical and mental anguish and loss of dignity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter a judgment and order:

1. declaring that Akal violated the ADA;

2. declaring that Akal violated the Florida Civil Rights Act.

3. granting Plaintiff equitable relief, including back pay;

4. awarding Plaintiff punitive damages, in an amount that a jury may award Plaintiff as a result of Akal's intentional discrimination;

5. awarding Plaintiff compensatory damages for physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and such other non-pecuniary damages that he suffered, all in an amount that a jury may award Plaintiff as a result of Akal's intentional discrimination;

6. awarding Plaintiff prejudgment and postjudgment interest;

7. granting Plaintiff his attorney's fees and costs in bringing this action; and

8. granting Plaintiff such other and further relief as this Court deems to be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial before a jury on all issues triable to a jury.

Dated: June 20, 2017.

By:  */s/ Dustin L. Watkins*
Dustin L. Watkins
Fla. Bar No. 106783
Marcus Braswell, Jr.
Fla. Bar No. 146160
SUGARMAN & SUSSKIND, P.A.
100 Miracle Mile Suite 300
Coral Gables, FL 33134
Tel: (305) 529-2801
Fax: (305) 447-8115

mbraswell@sugarmansusskind.com
dwatkins@sugarmansusskind.com

Thomas N. Ciantra*
Joshua J. Ellison*
Kate M. Swearengen*
Cohen, Weiss and Simon LLP
330 West 42nd Street, 25th Floor
New York, New York 10036
Telephone: (212) 563-4100
Facsimile:  (212) 695-5436

Attorneys for Plaintiff

*ized*Pro hac vice* applications pending.